United States District Court
Southern District of Texas
**ENTERED**
November 02, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENGIN ATTILA CALBAS, §
§
*Petitioner*, §
§
v. § CIVIL ACTION No. H-16-0605
§
LORIE DAVIS, §
§
*Respondent*. §

## MEMORANDUM OPINION AND ORDER

Petitioner, a state inmate proceeding *pro se*, filed this section 2254 habeas petition challenging his 2013 conviction and twelve-year sentence for intoxication manslaughter. Respondent filed a motion for summary judgment (Docket Entry No. 10), to which petitioner filed a response (Docket Entry No. 12).

Having considered the motion, the response, the pleadings, the record, and the applicable law, the Court **GRANTS** the motion for summary judgment and **DISMISSES** this lawsuit for the reasons that follow.

## I. PROCEDURAL BACKGROUND AND CLAIMS

A jury found petitioner guilty of intoxication manslaughter and assessed punishment at twelve years' imprisonment. The conviction was affirmed on appeal, *Calbas v. State*, No. 01-13-00128-CR (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd), and the Texas Court of Criminal Appeals refused discretionary review. Petitioner's application for state habeas

relief, filed with the trial court on October 12, 2015, was denied by the Texas Court of Criminal Appeals on February 24, 2016.

Petitioner raises the following grounds for federal habeas relief:

1.      Trial counsel was ineffective in failing to

   a.      investigate the case;

   b.      interview witnesses;

   c.      consult with expert witnesses;

   d.      suppress the blood draw;

   e.      review the original dash camera video;

   f.      object to evidence of the dash camera video; and

   g.      object to the "chain of custody" for the dash camera video.

2.      The State violated *Brady* by withholding evidence of the complete dash camera video and a reconstruction expert's report.

3.      He was denied the right to confront the lab technician who performed the blood draw and the coroner who performed the complainant's autopsy.

4.      The medical records were unlawfully introduced into evidence by a non-expert witness.

5.      No expert witness was presented regarding the "black box" evidence.

Respondent argues that these claims are groundless and should be dismissed.

## II.  FACTUAL BACKGROUND

The intermediate state court of appeals set forth the following statement of facts in its

opinion affirming petitioner's intoxication manslaughter conviction:

> Jeff Smith testified that, on the evening of July 10, 2011, he and appellant met
> at Twin Peaks—a restaurant/bar located at I–45 and Nasa Road 1—for dinner
> around 9:30 p.m.  There was at least an hour-long wait for a dinner table when
> they got there, so they sat down to have drinks with some friends.  According
> to Smith, during the hour that he and appellant were at Twin Peaks, appellant
> had two Vodka Red Bulls to drink, and they did not have dinner.  At 10:30
> p.m., appellant and Smith gave up on a table and drove to another restaurant,
> Outriggers, to eat.  Outriggers was closing when they got there so, instead of
> eating, appellant followed Smith to Smith's house so that Smith could drop off
> his truck.  Then appellant drove them both to the Turtle Club, a waterfront bar
> on Nasa Road 1 in Seabrook.  Appellant was driving a silver Corvette that
> belonged to a friend.  They arrived at the Turtle Club around 11:15 p.m., and
> stayed there until it closed at 2:00 a.m.
>
> Smith opened up a tab at the Turtle Club to pay for both his drinks and
> appellant's drinks.  He testified that, based upon that tab and witnessing
> appellant's drinking, appellant had four Vodka Red Bulls while they were at
> the Turtle Club.  At about 12:30 a.m., they ran into Tina Montana, one of
> Smith's friends.  Tina approached Smith for a ride home because she had been
> left there by some friends.  Her keys, wallet, and cell phone were on the
> friends' boat.  Appellant did not know Tina, but agreed to give her a ride home
> when they left for the night.
>
> Around 2:00 a.m., Smith closed out his tab and the three of them left.
> Appellant drove to Smith's house to drop him off first because it was closest.
> Smith was uncomfortable and did not feel safe during that drive, as appellant
> was smoking marihuana and "hot rodding it a little bit and showing off," *i.e.*,
> popping the clutch when leaving a stop sign, spinning the tires, and swerving.
> Smith asked appellant to stop driving that way, and he did.  When they got to
> Smith's house, Smith got out and appellant drove off with Tina.
>
> Smith testified that appellant then called him at 2:21 a.m. and said he had
> gotten in a wreck.  Smith drove to the site of the wreck, but turned around and
> drove back home when he saw police there because he knew he had been

3

drinking and should not have been driving. He similarly opined that appellant was too intoxicated to be driving that night.

A.     The Collision Investigation

Pasadena Police Department Officer B. Wagganer was on patrol in the early hours of July 11, 2011. He testified that while patrolling on eastbound Nasa Parkway, he could hear revving engines when approaching the 4900 block. He then saw a motorcycle speeding westbound in the inside lane and a Corvette "several car lengths behind it" in the outside lane. In Wagganer's opinion, both the motorcycle and the Corvette were driving "well over" the 45-mile-per-hour speed limit. He estimated that they were both driving over 100-miles-per-hour.

After he u-turned and headed back to try to catch them, Wagganer did not see the motorcycle or Corvette, but instead encountered "a bunch of debris in the roadway and dust everywhere . . . indicat[ing] something had crashed." He then discovered the Corvette in the backyard of a nearby residence. The car had crashed completely through the cinderblock wall that surrounded the yard.

When Wagganer approached, he saw appellant standing outside the passenger door "shaking an adult female in the passenger seat, trying to wake her up." Wagganer told him to stop in case she had a neck injury. When Wagganer asked appellant if he was hurt, appellant complained about back pain. According to Wagganer, appellant had "a very strong smell of alcohol beverage on his breath," he was "cursing," and he "had red, watery eyes and thick, slurred speech." Wagganer contacted dispatch to request a DWI Task Force officer and ordered an ambulance and an Accident Reconstruction Team. Wagganer said that he was not able to get a pulse on Tina and saw no sign of life, so he was investigating the scene as a possible fatality.

Wagganer testified that his car has a dash camera that is on all the time. The video from the early morning hours of July 11, 2011 was admitted over appellant's objection, and it shows the motorcycle and Corvette passing Wagganer, but not the accident. Wagganer also has a body microphone that comes on automatically to pick up his conversations. The conversation Wagganer had with appellant was played to the jury and Wagganer testified about some of the content. Because appellant smelled strongly of alcohol, Wagganer asked him how much he had to drink, and appellant responded "two beers." Appellant also told Wagganer that the motorcycle slid toward him,

which caused him to swerve and leave the roadway. Wagganer did not believe that was actually what had happened because when he saw the motorcycle and the Corvette, there were four or five vehicle lengths between them. Wagganer testified that appellant later "change [d] his story."

EMS arrived and put appellant on a back board, and he can be heard on the audio tape yelling that his back is hurting. It was later determined that he had broken his back. EMS pronounced Tina deceased and transported appellant to the hospital. The jury was shown and explained numerous admitted pictures of the scene.

Pasadena Police Officer J. Ridings, an accident reconstruction expert, testified about his assessment of the scene. His team concluded that the Corvette was travelling so fast that it was airborne when it struck the cinderblock fence. His analysis of the skid marks showed that the car travelled in a straight line after it began skidding, which would be inconsistent with the driver suddenly swerving to miss hitting something like a motorcycle.

Ridings also testified to the results of downloading and analyzing the Corvette's airbag module system. From that data, he testified that five seconds before impact, the car was travelling at 106 miles per hour; it surged to 109 miles per hour four seconds before impact, and then up to 113 miles per hour 3 seconds before impact. He concluded that the car first braked two seconds before impact, which was consistent with the skid marks and the other evidence at the scene.

B.    The DWI Investigation

Pasadena Police Officer S. Cude testified that, at the time of this accident, he served on the DWI Task Force and had specialized training in investigating intoxication-related offenses. When he arrived at the scene of the accident, appellant was already in the back of the ambulance receiving treatment. Cude started by talking with Wagganer about what Wagganer had observed. Cude then looked around the accident scene and then followed appellant's ambulance to the hospital to continue the investigation. When Cude first observed appellant, he was in a lot of pain and being wheeled into the emergency room. Cude stayed with him, and when there was a lull in the activity of medical providers, Cude spoke with appellant. Cude observed him to have slurred speech and red, bloodshot eyes, both consistent with intoxication and what he had learned from Wagganer. Given appellant's

medical impairment, Cude was only able to perform one of the three standard field sobriety tests, the "horizontal gaze nystagmus" (HGN). Cude first administered several tests to confirm that appellant was a candidate for the HGN test, and that there were not any conditions that would render any results invalid. Cude then conducted the HGN, and appellant displayed all possible six clues of intoxication. Cude asked appellant whether he had been drinking and whether he had been driving. Appellant admitted to drinking and to driving the silver Corvette.

Cude determined, based upon the totality of the circumstances, his observations, Wagganer's observation, and the results of the HGN test that appellant was intoxicated. He then read him the DIC 24 (DWI statutory warning). At that point, he considered appellant to be in custody for DWI and intoxication manslaughter. After being read the statutory warnings, appellant refused Cude's request that he submit a blood specimen. Cude explained that a blood draw was nonetheless mandatory in this case, because he believed appellant to be intoxicated and because he believed that intoxication had caused Tina's death. He filled out the mandatory blood draw order for the hospital and the nurse drew appellant's blood less than one and a half hours after the accident. Tests on that blood revealed appellant's blood alcohol level to be .142 and detected marihuana in his system.

*Calbas*, at *2–7.

## III.  THE APPLICABLE LEGAL STANDARDS

A.    Habeas Review

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011);

6

*Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id.*, at 102–03 (emphasis added; internal citations omitted).

7

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller–El*, 537 U.S. at 330–31.

B.      Summary Judgment

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed

8

facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

      C.    *Cullen v. Pinholster*

Under AEDPA's limited scope of review, this Court will only consider and review evidence in the record that was before the state court. In *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011), the United States Supreme Court made clear that federal courts may not consider new evidence in determining if the state court's adjudication was reasonable. Consequently, this Court has not considered for purposes of AEDPA review any documents, statements, evidence, or other testimonial matters set forth by petitioner in this proceeding that were not presented timely and properly to the state court.

## IV.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient

performance. *Id*. at 687. The failure to demonstrate deficient performance or prejudice is fatal to a *Strickland* claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

The Supreme Court recently emphasized in *Richter* the manner in which a federal court is to consider an ineffective assistance of counsel claim raised in a habeas petition subject to AEDPA's limitations:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

562 U.S. at 101 (internal quotation omitted).

Petitioner asserts the following as instances of ineffective assistance of trial counsel.

A.    Failure to investigate

Petitioner contends that counsel failed to conduct an adequate investigation into the facts and potential witnesses. In his application for state habeas relief, petitioner focused his claim on counsel's alleged failure to investigate admissibility of the blood test results. In rejecting the claim, the state trial court made the following relevant findings of fact:

8.    A sample of the applicant's blood was drawn, without a warrant, pursuant to Texas Transportation Code § 724.012 (b)(1)(a).

9.    A sample of the applicant's blood was also drawn for medical purposes.

10.   The applicant claims trial counsel failed to investigate the law necessary to suppress the results from the mandatory blood draw.

11

11. The applicant seems to suggest that trial counsel should have argued the blood should have been suppressed under *Missouri v. McNeely*, 133 S. Ct. 1552, 1563 (2013).

12. The Supreme Court of the United States decided *McNeely* on April 17, 2013.

13. The applicant's trial occurred approximately three months prior to the Supreme Court's decision in *McNeely*.

14. The applicant does not show what trial counsel would have discovered if he would have conducted additional investigation into the law regarding suppression of blood evidence at the time of the applicant's trial.

*Ex parte Calbas*, pp. 103–04 (record, case citations omitted). The state trial court also made

the following relevant conclusions of law:

1. When reviewing trial counsel's conduct, the reviewing court measures counsel's performance against the state of the law in effect during the time of trial.

2. Because the Supreme Court had not decided *Missouri v. McNeely* at the time of the applicant's trial, trial counsel was not ineffective for failing to argue the applicant's blood should have been suppressed under *McNeely*.

3. The applicant fails to show trial counsel was ineffective for failing to investigate the law regarding suppression of blood evidence because the applicant fails to show what additional investigation would have shown.

4. To be entitled to habeas relief, an applicant must plead and prove facts which entitle him to relief and he must prove his claim by a preponderance of the evidence.

\*     \*     \*     \*

12

13.   In all things, the applicant fails to show he was denied effective representation of counsel at trial.

*Id.*, pp. 110–11 (citations omitted). The Texas Court of Criminal Appeals relied on the trial court's findings of fact and conclusions of law in denying state habeas relief. *Id.*, at cover.

Petitioner presents no proof of what an additional investigation would have revealed, nor does he show that counsel was unaware of it and how it would have changed the outcome at trial. The record itself does not establish what an additional investigation would have shown or how it would have changed the trial's outcome. Petitioner's speculative and conclusory claim is unsupported by the record and warrants no habeas relief. *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) ("Although *pro se* habeas petitions must be construed liberally, mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.") (internal quotation omitted).

The state court denied habeas relief. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

B.   Failure to interview witnesses

Petitioner generally contends that counsel failed to interview and/or call non-expert witnesses.

"[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to

testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). "Complaints based upon uncalled witnesses [are] not favored because the presentation of witness testimony is essentially strategy and thus within the trial counsel's domain, and . . . speculations as to what these witnesses would have testified is too uncertain." *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). In order for petitioner to demonstrate the requisite *Strickland* prejudice, he must show not only that the specific testimony would have been favorable, but also that the witness would have testified at trial. *Id.*

Petitioner failed to provide any evidence in support of claim for omitted witnesses, and the state habeas court's conclusion that counsel was not ineffective was not an unreasonable determination. Petitioner's conclusory assertions of uncalled witnesses and possible testimony are speculative and unsupported in the record, and provide no basis for relief. Petitioner establishes neither deficient performance nor actual prejudice, and habeas relief is unwarranted in this instance.

The state court denied habeas relief. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

C.     Failure to consult expert witnesses

Petitioner argues that counsel should have retained an expert witness to show that the dash camera video had been altered.  This, he claims, would have allowed the defense to show that petitioner did not cause the accident or the complainant's death.  He also complains that counsel should have consulted with and called an accident reconstructionist.

In rejecting these claims, the state trial court made the following relevant findings of fact on collateral review:

43.    The applicant claims that a video expert would have shown that the dash camera video was altered.

44.    The applicant's claim that a video expert would have shown that the dash camera video was altered is conclusory.

45.    The prosecutor had technical difficulties with the video during trial and offered a duplicate copy as an alternative.

46.    Trial counsel did not object to the admission of the duplicate copy.

47.    The applicant offers no proof in support of his claim that a video expert would have shown that the dash camera video was altered.

48.    The applicant fails to identify a video expert.

49.    The applicant fails to show that a video expert was available or that such expert would testify to the applicant's benefit.

50.    The applicant claims that an accident reconstructionist would have shown that the applicant did not cause the crash and that the "black box" data was flawed.

51.    The applicant's claims that an accident reconstructionist would have shown that the applicant did not cause the crash and that the "black box" data was flawed [are] conclusory.

15

52.     The applicant offers no proof in support of his claim that an accident reconstructionist would have shown that the applicant did not cause the crash and that the "black box" data was flawed.

53.     The applicant fails to identify an accident reconstructionist.

54.     The applicant fails to show that an accident reconstructionist was available or that such expert would testify to the applicant's benefit.

*Ex parte Calbas*, pp. 107–08 (citations omitted).   The state trial court also made the following relevant conclusions of law:

10.     Because the applicant fails to show that a video expert was available or that their testimony would have benefited the defense, the applicant fails to show that trial counsel was ineffective for failing to call such an expert.

11.     Because the applicant fails to show that an accident reconstructionist was available or that their testimony would have benefited the defense, the applicant fails to show that trial counsel was ineffective for failing to call such an expert.

12.     The applicant's conclusory allegations that a video expert and an accident reconstructionist would have benefited his case is not sufficient proof to warrant habeas relief.

13.     In all things, the applicant fails to show he was denied effective representation of counsel at trial.

*Id.*, p. 111 (citations omitted).   The Texas Court of Criminal Appeals relied on the state trial court's findings of fact and conclusions of law in denying habeas relief.   *Id.*, at cover.

The instant claim, as with petitioner's other claims, are based on pure speculation and conclusory assertions that are unsupported in the record.   Petitioner fails to name the omitted expert witness, fails to demonstrate that the expert witness was available to testify and would

have done so, fails to set out the content of the expert witness's proposed (not speculative) testimony, and fails to show that the testimony would have been favorable to a particular defense. *See Day*, 566 F.3d at 538. Petitioner's conclusory allegations of an omitted expert witness are unsupported in the record, and demonstrate neither deficient performance nor actual prejudice under *Strickland*. Habeas relief is unwarranted.

The state court denied habeas relief. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

    D.    <u>Failure to suppress the blood draw</u>

Petitioner claims that trial counsel should have moved to suppress the results of petitioner's blood draws, which showed that he was legally intoxicated for purposes of the intoxication manslaughter charges.

To the extent petitioner's argument is based in the Supreme Court's post-trial decision in *Missouri v. McNeely*, 133 S. Ct. 1552, 1563 (2013), this Court addressed and rejected the argument under petitioner's failure to investigate claim, *supra*.

To the extent petitioner's argument is based on the Supreme Court's decision in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), the state habeas court made the following relevant findings of fact:

    27.    The applicant claims trial counsel was ineffective for failing to object
            to a "lab tech's" testimony regarding blood results.

28.   The applicant claims that because the "lab tech" did not perform the analysis, it was error for him to testify to the results.

29.   The applicant cites *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), in support of this claim.

30.   It appears the applicant is complaining of Registered Nurse, James Salinas' testimony.

31.   The applicant's medical records were admitted into evidence.

32.   James Salinas, the registered nurse who drew the applicant's blood for medical purposes, testified to the results contained in the applicant's medical records.

33.   The Supreme Court of the United States noted in *Melendez-Diaz* that medical records, created for treatment purposes, would not be considered "testimonial" under their holding.

34.   The applicant fails to show that the medical records were not admissible.

35.   The applicant fails to show that the results of the blood draw done for medical purposes were not admissible.

36.   The applicant fails to show that the trial court would have committed error in overruling an objection to the blood results.

*Ex parte Calbas*, pp. 105–06 (citations omitted).  The state court further made the following

relevant conclusion of law:

7.   Because the applicant fails to show that the trial court would have committed error in overruling an objection to the results of the blood draw done for medical purposes, the applicant fails to show trial counsel was ineffective for failing to object to the results.

*Id.*, p. 110 (citations omitted).  The Texas Court of Criminal Appeals relied on these findings

of fact and conclusions of law in denying habeas relief.  *Id.*, at cover.

Petitioner establishes neither a factual nor legal basis under which counsel's proposed objection would have prevailed.  The arguments he presents are unsupported by law or the record, and afford him no basis for federal habeas relief.

The state court denied habeas relief.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment dismissal of this claim.

E.    Failure to review dash camera video

Petitioner alleges that trial counsel was ineffective in failing to review the deputy's dash camera video prior to trial.  He claims that, had counsel reviewed the video, he would have discovered that it was the deputy, not petitioner, who caused the accident and complainant's death.

In rejecting this claim on state collateral review, the state trial court made the following relevant findings of fact:

15.    The applicant claims trial counsel failed to review the dash-camera video and that if trial counsel would have reviewed the video, trial counsel would have discovered that the officer caused the crash.

16.    The applicant's claim that trial counsel failed to review the video is not persuasive.

17.    Before testimony began, the, prosecutor informed the trial court that there was a video she intended to show, that she had already shown the video to trial counsel, and that trial counsel was aware of the video.

19

18.   Trial counsel was present when the prosecutor informed the court of her intention to show the video.

19.   Trial counsel did not indicate that the prosecutor's statement was incorrect or that he had not seen the video.

20.   When the prosecutor offered the video into evidence, trial counsel objected on the grounds that the video contained hearsay and that the applicant was not given any *Miranda* warnings.

21.   Trial counsel did not object on the grounds that he was not given notice of the video.

22.   The applicant offers no proof in support of his claim that trial counsel had not reviewed the video prior to trial.

*Ex parte Calbas*, pp. 104–05 (record citations omitted).  The trial court also made the following relevant conclusions of law:

4.   To be entitled to habeas relief, an applicant must plead and prove facts which entitle him to relief and he must prove his claim by a preponderance of the evidence.

5.   The applicant fails to show that trial counsel had not reviewed the video; accordingly, the applicant fails to prove facts which would entitle him to relief.

*Id.*, p. 110 (citations omitted).  The Texas Court of Criminal Appeals relied on the trial court's findings of fact and conclusions of law in denying state habeas relief.  *Id.*, at cover.

Petitioner argues that he was not allowed to "develop the facts"of this claim, in that the state trial court did not require counsel to submit an affidavit responding to petitioner's claims.  Petitioner's argument ignores the facts that the prosecutor stated on the record that she had shown the video to trial counsel prior to trial, and that counsel voiced no objection

to or disagreement with the prosecutor's statement.  Moreover, trial counsel objected to the

video on grounds that it contained hearsay, which supports the State's position that counsel

had viewed the video.  Counsel did not object to the video on grounds of lack of notice or

surprise. Petitioner presents no probative summary judgment evidence refuting the presumed

veracity of the record, and his conclusory, unsupported claim warrants no habeas relief.

The state court denied habeas relief.  Petitioner fails to show that the state court's

determination was contrary to, or involved an unreasonable application of, *Strickland* or was

an unreasonable determination of the facts based on the evidence in the record.  Respondent

is entitled to summary judgment dismissal of this claim.

F.    Failure to object to dash camera video

Petitioner claims that trial counsel should have objected to introduction of the dash

camera video into evidence.

On direct appeal, petitioner argued that the trial court erred in admitting the dash

camera video.  The intermediate state court of appeals disagreed, and held as follows:

> Appellant argues that "the dash cam video presented evidence, the probative
> value of which was substantially outweighed by the danger unfair prejudice,
> confusion of the issues, or misleading the jury."  Specifically, he argues, "the
> statements immediately and deliberately elicited from Appellant by the officer
> were more prejudicial than probative when the basis for any such impairment
> by Appellant at the scene of a fatal traffic accident had not been determined."
> His argument is essentially that the video could have no probative value in
> demonstrating signs of his impairment because he "had been in a very serious
> accident, which was at least equally able to render him not having the normal
> use of his mental and physical faculties."  Because, according to appellant, the
> video is "not circumstantially relevant," the "heightened probability of
> confusing the effects of the accident with facts probative of intoxication is

unfairly prejudicial and substantially outweighed by the danger of misleading and confusing the jury."

Appellant admitted to drinking alcohol on the video at issue, but claimed that he had only had "two beers"—a fact refuted by significant other evidence, including Smith's testimony about how much alcohol appellant had consumed before the accident. Appellant has not overcome the presumption that this relevant video is more probative than prejudicial, nor has he argued—much less demonstrated—that the impact of such evidence would not be rendered harmless by the substantial other evidence at trial of his intoxication.

*Calbas*, at *7–8 (citations omitted).

Because the state court on direct appeal overruled petitioner's objections to the dash camera video, petitioner cannot show that trial counsel was deficient in not raising those objections during trial. As a result, petitioner fails to show that trial counsel was deficient under *Strickland*. Moreover, petitioner fails to show that, but for counsel's failure to object to the dash camera video, there is a reasonable probability that the result of the trial would have been different. Petitioner establishes neither deficient performance nor actual prejudice, and habeas relief is unwarranted.

The state court denied habeas relief. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

G.     Chain of custody

Petitioner merit no habeas relief on his "chain of custody" argument, primarily because he fails to allege and prove any deficiencies in the chain of custody that would have

resulted in exclusion of the evidence. "Chain of custody" is covered by Rule 901 of the Texas Rules of Evidence concerning authentication and identification of evidence. *See Davis v. State*, 992 S.W.2d 8, 10–11 (Tex. App. – Houston [1st Dist.] 1996, no pet.). The dash camera video was authenticated by police officers with knowledge, as required by the state rule, and petitioner establishes nothing to the contrary. Petitioner fails to assert a specific chain of custody objection counsel should have raised, and fails to show that, had counsel raised the specific objection, the video would have been excluded. Petitioner's conclusory and speculative allegations provide no basis for habeas relief, and neither deficient performance nor actual prejudice is shown under *Strickland*.

The state court denied habeas relief. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

## V. DENIAL OF DUE PROCESS

Petitioner argues that he was denied due process because the complainant's autopsy was undertaken by an individual who was subsequently convicted of mortgage fraud.

In denying this claim on collateral review, the state trial court made the following relevant findings of fact:

72.  Dr. Flores was indicted for mortgage fraud at the time of the applicant's trial.

73.  Dr. Flores did not testify at the applicant's trial.

23

74.   Dr. Flores' autopsy report was not admitted into evidence during the applicant's trial.

75.   The applicant fails to show he was denied due process.

76.   The applicant fails to show any harm as a result of Dr. Flores conducting the autopsy.

*Ex parte Calbas*, pp. 109–10 (citations omitted).  The state trial court also made the following relevant conclusions of law:

19.   Because Dr. Flores did not testify at trial and the autopsy report Flores prepared was not admitted during the applicant's trial, the applicant fails to show he was denied due process when Dr. Flores conducted the autopsy.

20.   The applicant fails to plead and prove facts that show he was denied due process.

*Id.*, p. 112 (citations omitted).  The Texas Court of Criminal Appeals relied on these findings of fact and conclusions of law in denying state habeas relief.  *Id.*, at cover.

Petitioner's allegations of the denials of due process are conclusory, speculative, and unsupported in the record, and warrant no habeas relief.  His general disagreements with the state court's determinations are insufficient to meet his burden of proof under AEDPA.

The state court denied habeas relief.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment dismissal of this claim.

## VI.  *BRADY* VIOLATIONS

Petitioner next claims that the State violated *Brady* by withholding evidence of a complete or unaltered dash camera video and an accident reconstructionist expert's report. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963).  According to petitioner, these items would have shown that the collision and complainant's death were caused by one of the police officers, and not by petitioner's intoxication.

In rejecting these claims on collateral review, the state trial court made the following relevant findings of fact:

23. The applicant claims trial counsel was ineffective for failing to object to the [SOKKIA] Total Station "report" not being entered into evidence.

24. The scene diagram created by the [SOKKIA] Total Station was admitted into evidence.

25. The applicant fails to identify the "report" he refers to that he claims should have been entered into evidence.

26. The applicant fails to show that another "report" generated by the [SOKKIA] Total Station exists.

\*    \*    \*    \*

58. The applicant claims that the prosecutor withheld exculpatory evidence and denied him due process by withholding an unaltered copy of the dash camera video.

59. The applicant offers no proof in support of his claim that the dash camera video was altered.

60. The applicant claims that the prosecutor withheld the [SOKKIA] Total Station report.

25

61.    The applicant offers no proof in support of his claim that the prosecutor withheld the [SOKKIA] Total Station report.

*Ex parte Calbas.*, pp. 105, 108 (citations omitted).   The state trial court also made the following relevant conclusions of law:

6.    Because the applicant fails to identify the [SOKKIA] Total Station "report" he refers to, or prove that such a "report" exists, the applicant fails to prove facts which would entitle him to relief.

\*    \*    \*    \*

14.    The applicant's conclusory allegation that the dash camera video was altered and that an unaltered copy was never turned over to the defense is not sufficient proof to warrant habeas relief.

15.    The applicant's conclusory allegation that the prosecutor withheld the SOKKIA Total Station report is not sufficient proof to warrant habeas relief.

*Id.*, pp. 110–111 (citations omitted).   The Texas Court of Criminal Appeals relied on these findings of fact and conclusions of law in denying habeas relief.   *Id.*, at cover.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.   To establish a *Brady* violation, the appellant must show that (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to him; and (3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed the outcome of the trial would have been different.

Petitioner satisfies none of these requirements. His allegations of suppressed evidence are conclusory, speculative, and unsupported in the record, and warrant no habeas relief. His general disagreements with the state court's determinations are insufficient to meet his burden of proof under AEDPA. Petitioner presents no probative evidence that the State has possession or knowledge of a different, unaltered dash camera video or accident reconstruction report that absolved him of fault in causing complainant's death.

The state court denied habeas relief. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

## VII. RIGHT OF CONFRONTATION

Petitioner also complains that he was denied the right to confront the lab technician who performed the blood draw and the coroner who performed the complainant's autopsy.

In denying relief on these claims, the state trial court made the following relevant findings of fact:

> 37. The applicant claims that Assistant Medical Examiner Dr. Wolf's testimony was inadmissible because Dr. Wolf did not conduct the autopsy of the complainant.
>
> 38. Dr. Luisa Flores conducted the autopsy of the complainant.
>
> 39. Dr. Luisa Flores was no longer employed at the Harris County Institute of Forensic Sciences at the time of trial.

40.     Dr. Wolf reviewed the photographs of the internal and external examinations of the complainant as well as the report, charts and diagrams and was able to form his own opinion as to the cause of death.

41.     Dr. Wolf's opinion regarding the cause of death was admissible under [Texas state law].

42.     The applicant fails to show that the trial court would have committed error in overruling an objection to Dr. Wolf's testimony.

*     *     *     *

62.     The applicant claims he was denied the right to confront witnesses when a "lab tech" who did not conduct the testing was allowed to testify to test results.

63.     The applicant claims he was denied the right to confront witnesses when another medical examiner testified to the autopsy results.

64.     The registered nurse who drew the applicant's blood for medical purposes testified to the lab results contained in the applicant's medical records.

65.     The applicant fails to show that the blood results were "testimonial."

66.     The applicant's claim that he was denied his right to confront witnesses when Dr. Wolf testified to Dr. Flores' autopsy report is not persuasive.

67.     The prosecutor did not offer Dr. Flores' autopsy report.

68.     The prosecutor indicated that she was not going to introduce Dr. Flores' autopsy report.

69.     Dr. Wolf was able to form his own opinion regarding the cause of death in this case.

70.     It was not necessary to admit Dr. Flores' report in order for Dr. Wolf's opinion to be admissible.

*Ex parte Calbas*, pp. 106–09 (citations omitted).   The state trial court also made the following relevant conclusions of law:

> 8.    Because Dr. Wolf was able to form his own opinion regarding the cause of death, his opinion was admissible.
>
> 9.    Because the applicant fails to show that the trial court would have committed error in overruling an objection to Dr. Wolf's testimony, the applicant fails to show that trial counsel was ineffective for failing to object to Dr. Wolf's testimony.
>
> \*    \*    \*    \*
>
> 16.   In order to implicate the Confrontation Clause, an out-of-court statement must (1) have been made by a witness absent from trial and (2) be testimonial in nature.
>
> 17.   Because the applicant fails to show that the blood results were "testimonial," the applicant fails to show that the Confrontation Clause was implicated.
>
> 18.   Because Dr. Flores' autopsy report was not admitted during the trial, the applicant fails to show that the Confrontation Clause was implicated.

*Id.*, pp. 111–12 (citations omitted).   The Texas Court of Criminal Appeals relied on these findings of fact and conclusions of law in denying state habeas relief.   *Id.*, at cover.

In *Crawford v. Washington*, 541 U.S. 36, 54–57, 68 (2004), the Supreme Court held that out-of-court testimonial statements are barred by the Sixth Amendment's Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. Only testimonial statements "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821

(2006). The state trial court applied these principles in denying petitioner's confrontation claims on state habeas review, and petitioner fails to show that the state court's determinations were unreasonable. His general disagreements with the state court's determinations are insufficient to meet his burden of proof under AEDPA.

The state court denied habeas relief. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

## VIII. INADMISSIBLE MEDICAL RECORDS

Petitioner contends that his medical records were introduced into evidence by someone who was not an expert, in violation of state evidentiary rules and authorities.

As posed, this issue does not raise grounds meriting federal habeas relief. A person seeking federal habeas review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993). Federal habeas relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996). In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

Regardless, and to any extent petitioner has raised a federal habeas issue, the intermediate state appellate court rejected petitioner's underlying arguments on direct appeal:

By agreement, portions of appellant's medical records were introduced into evidence. Nurse Salinas, the medical provider who drew appellant's blood separately for medical purposes and for alcohol-testing purposes, testified without objection that the results of appellant's blood alcohol tests were .142, which was well above the legal limit of .08, and approaching the toxic range of .25. Nurse Salinas also testified to the results of appellant's urinalysis, which indicated that he had cannabis, or marihuana, in his system when he was brought to the hospital after the collision.

When the State sought to introduce the Pasadena Police Department Regional Crime Laboratory Report, which also contained the results of appellant's blood tests, appellant objected. Outside the presence of the jury, the court permitted appellant to take D. Sanders, the sponsoring witness, on voir dire. Sanders is a chemist, toxicologist, and technical supervisor with the City of Pasadena Police Department Crime Laboratory. During this examination, Sanders agreed that he (1) did not know if a warrant for the blood was obtained, (2) did not know whether the room in which the blood was drawn was properly sanitized, (3) did not know if appellant's arm was properly cleaned, (4) did not know if the blood was properly drawn or the vials properly sealed, and (5) did not know what procedures or protocols were followed before the blood arrived at the lab.

On appeal, appellant argues that the State failed "to qualify the witness pursuant to the standard set in *Daubert.*

The State responds that appellant's objections at trial were specific to chain-of-custody, and that the information that appellant complains Sanders could not provide in his testimony was provided by other witnesses. Specifically, the State notes that together the testimony of the DWI task force officer, the blood-draw nurse, and Sanders established the chain-of-custody and that proper protocols were followed. The State points out that the trial court performed a *Daubert* analysis, properly finding Sanders to be qualified and the scientific bases of his testimony to be valid[:]

> The Court does find, for purposes of this hearing: First of all, with regard to the admissions of the testimony through this witness, who is an expert witness, that the witness qualifies as an expert by reason of his knowledge, skill, training and experience; that the subject matter of the testimony is an appropriate one for expert testimony; and that admitting such

31

> expert testimony in this circumstance would assist the fact finder in deciding the case.  Secondly, with regard to the scientific analysis and the results thereof, the Court would find that this specific scientific evidence—that the underlying scientific theory to be valid; the technique, applying the theory to be valid; and the technique that was applied in this case was properly applied in this circumstance.
>
> Finally, the State argues that any error would be harmless, as the very same information about appellant's blood-alcohol level and marihuana content objected to in the Crime Lab Report was admitted through appellant's medical records and Salinas's testimony.  We agree.

*Calbas*, at *9–10 (citations omitted).

Petitioner supports his arguments here with nothing more than his general disagreement with the state court's determinations, which is insufficient to meet his burden of proof under AEDPA.  Habeas relief is unwarranted.

The state court denied habeas relief.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment dismissal of this claim.

## IX.  "BLACK BOX" EVIDENCE

Petitioner next complains that no expert was presented by the State regarding evidence retrieved from the Corvette's "black box."  The trial record shows that the black box was a computer-based recorder within the Corvette automobile that recorded engine functions, speed, and other operational data.  The black box in this case was removed by investigators after the collision, and the recorded data was analyzed.  At trial, State's witness Officer

Ridings discussed the black box data and its analysis. Petitioner contends that Ridings was

not qualified as an expert to testify as to the data and its analysis.

In rejecting this argument on direct appeal, the intermediate state court of appeals held

as follows:

> Officer Ridings testified to his education, training, and experience in
> automobile accident investigation and reconstruction. Outside the presence of
> the jury, he testified about his examination of the Corvette's crash data
> retrieval system a/k/a the black box, which records certain events for five
> seconds before deployment of a vehicle's airbags. Ridings testified that data
> is retrieved from the box through a computer program and that he has
> performed this same analysis seven or eight times on other vehicles, but not on
> this particular type of Corvette. Appellant objected at trial, arguing that
> Ridings was not "qualified to testify as to the results of the download" of data
> from the black box. The trial court overruled that objection.
>
> Here, appellant argues that the trial court committed reversible error allowing
> the State to admit an exhibit containing data from the crash data retrieval
> system because [Ridings] was not qualified under *Daubert*. The State disputes
> that *Daubert* has any application here, and points out that—in any event,
> appellant has never objected to the reliability of the airbag module—but
> instead only argued that [Ridings] was not qualified to testify about the results.
> Finally, the State argues that even if Ridings were required to possess some
> particular qualification to review and testify to the results of the black box data
> download, Ridings possessed such qualifications.
>
> In his brief, appellant cites the standards for evaluating the scientific reliability
> of particular evidence at length, but reliability was never raised in the trial
> court. More importantly, appellant has not argued how the evidence about his
> speed—the primary subject of Ridings testimony about the black box
> recording report—was harmful. Accordingly, we decline to decide on this
> record whether and under what circumstances expert testimony is required
> with regard to black box data and its retrieval. Instead, because we are
> confident that this particular black box evidence about appellant's speed before
> impact would not have impacted the jury's decision, we hold that any error in
> its admission would be harmless.

A similar issue was addressed in *Pena v. State*, also an intoxication-manslaughter case. The defendant in *Pena* challenged the qualifications of the accident-reconstruction officer and the reliability of the surveying instrument (*i.e.*, the Accident Investigation Measuring System (AIMS)) used to estimate the defendant's pre-accident speed. The court of appeals held that the officer was qualified through his training and experience, but that the State had failed to establish the reliability of the AIMS formula supporting his testimony that the defendant's car was travelling 106 miles per hour before the fatal accident at issue. In concluding that admission of the speed testimony was erroneous but nonetheless harmless, the court noted that evidence of a particular speed is not necessary to support an intoxicated-manslaughter conviction. Rather, the jury must find that the defendant was intoxicated while driving in a public place, and that intoxication caused the death of the victim. The *Pena* court relied upon the abundance of other evidence about the defendant's unsafe speed and the elements of intoxication manslaughter:

> The evidence shows that Appellant was driving in excess of 60 miles per hour as he passed Zachary Valenzuela and approached the Lee Trevino Gateway West intersection. Mr. Valenzuela did not see Appellant attempt to brake prior to the accident and witnesses testified that the intersection was well-lit and the roadway was dry. Physical evidence and witness testimony indicated that the front of Appellant's vehicle collided with the rear end of the victims' vehicle, causing their vehicle to go airborne and spin around to face oncoming traffic. Through her rearview mirror, Veronica Huerta Garcia saw Appellant's vehicle slam against the guardrail at a high speed, causing sparks to fly. In unchallenged testimony, Officer Cisneros testified that he found no pre-impact brake marks and no pre-impact skid marks at the accident scene. El Paso County Medical Examiner Dr. Juan Contin testified that the passenger victim bled to death from a torn aorta, resulting from the collision. Dr. Contin also testified that the driver victim died the following day in the hospital from injuries sustained in the collision.

> After examining the record as a whole, we find the evidence above was sufficient to support the jury's affirmative finding that Appellant used his motor vehicle in a manner that was capable of causing death or serious bodily injury, without considering the speed evidence introduced through Officer

> Cisneros' testimony.  The trial court's erroneous admission of
> the speed evidence did not affect Appellant's substantial rights
> and in light of other properly admitted evidence we are assured
> that if its admission influenced the jury at all, it did so only
> slightly. Therefore, we find the trial court's error to be harmless.

> Similarly, here Wagganer estimated—without objection—that appellant was
> travelling over 100 miles per hour when he passed Wagganer right before the
> collision.  Ridings testified about his team's conclusion that the Corvette was
> travelling at such a high rate of speed that it was airborne when it crashed
> through the cinderblock fence.  Smith likewise testified that appellant was
> speeding and driving unsafely shortly before the accident.   Finally, the
> Corvette travelled a significant distance off the road and suffered devastating
> damage, which is consistent with the other evidence that appellant was driving
> at an unsafe speed.  In light of this evidence, we conclude—as the *Pena* court
> did—that any "erroneous admission of the speed evidence did not affect
> Appellant's substantial rights."

*Calbas*, at *11–12 (citations omitted).

Even assuming Ridings had not been qualified to testify to the Corvette's speed based

on the black box data, Wagganer presented similar testimony based on his personal

observations of the Corvette.  The State was not required to prove the Corvette's exact speed

prior to or at the time of impact, as measurement of the speed itself was not an element of the

criminal offense.  Likewise, it is of no moment that the black box speed data may or may not

have been reliable once the Corvette went airborne seconds before impact; vehicle speed at

impact was not an element of the charged offense.  As found by the intermediate state court

of appeals, petitioner's "Corvette travelled a significant distance off the road and suffered

devastating damage, which is consistent with the other evidence that [petitioner] was driving

at an unsafe speed." *Calbas*, at 12.  The State proved that petitioner had been driving at an

unsafe speed at or near the time of impact; whether that speed was 106, 109, or 113 miles per hour was not an essential factor. Petitioner has not shown that Ridings's testimony had a substantial and injurious effect on the jury's verdict under *Brecht v. Abramson*, 507 U.S. 619, 636–39 (1993), and habeas relief is unwarranted.

The state court denied habeas relief. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

## X.  CONCLUSION

The motion for summary judgment (Docket Entry No. 10) is **GRANTED** and this habeas lawsuit is **DISMISSED WITH PREJUDICE**. Any and all other pending motions are **DENIED AS MOOT**. A certificate of appealability is **DENIED**.

Signed at Houston, Texas, on _____ NOV 0 2 2016 _____.

ALFRED H. BENNETT
UNITED STATES DISTRICT JUDGE